**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KENDALL REESE,                                :
                                              :
        Plaintiff,                            :        Case No. 2:18-cv-03300-NIQA
                                              :
    v.                                        :
                                              :
UBER TECHNOLOGIES, INC., *et al.*             :
                                              :
        Defendants.                           :

### DEFENDANT'S REPLY IN SUPPORT OF THE MOTION TO DISMISS THE CASE

Mr. Reese's sole argument in opposition to Uber's Motion to Dismiss is that he is exempted from the Arbitration Agreement because he is a "transportation worker" within the meaning of Section 1 of the Federal Arbitration Act ("FAA"). In support of this assertion, he attaches an affidavit[1] that purports to satisfy his requirement to demonstrate that he works in interstate commerce. Mr. Reese's attempts to invalidate the arbitration agreement are insufficient to overcome the strong presumption in favor of arbitrability. Courts throughout the country have found that the FAA's exemption does not apply to workers who transport people as opposed to goods. Further, Mr. Reese failed to meet his burden to establish that he falls within a "class of workers engaged in interstate commerce" even if transporting people were exempted from the FAA. Regardless of whether Mr. Reese may have occasionally crossed state lines while transporting passengers, the work that he performed was inherently local, not interstate, in nature. Finally, notwithstanding the FAA exemption, the Pennsylvania Uniform Arbitration Act

---

[1] Mr. Reese asserts that this Court should consider the instant motion using a Rule 12 analysis that is limited to consideration of the pleadings. His entire argument seeking denial of Uber's Motion is based on an affidavit that he submits in support of his position. This Court can and should consider the Hughes Declaration as well as Mr. Reese's affidavit in reaching its conclusion. *See Kocjancic v. Bayview Asset Management, LLC*, 2014 WL 5786900, * 2 (E.D. Pa. Nov. 6, 2017) (Quiñones Alejandro, J.)

has no transportation worker exemption and Mr. Reese's agreement to arbitrate is equally enforceable under Pennsylvania Law.

## I.      THE TRANSPORTATION WORKER EXEMPTION DOES NOT APPLY

### A.      The FAA Exemption Only Applies To Workers "Actually Engaged In The Movement Of Goods In Interstate Commerce"

The FAA broadly applies to "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2.  Section 1 of the FAA exempts a narrow category of "contracts of employment for seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  *Id.* § 1.  The Supreme Court in *Circuit City Stores v. Adams* explained that the term "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" applies only to "workers 'actually engaged in the movement of goods in interstate commerce.'"  532 U.S. 105, 112 (2001).  The court explained that the exemption was based on Congress's "concern with transportation workers and their necessary role ***in the free flow of goods***."  *Id.* at 121 (emphasis added).  Moreover, these workers must transport goods ***in the same sense as*** seamen and railroad employees.  *See also Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 601 (6th Cir. 1995) ("[T]he exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are."); *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996) (same).

Unlike seamen and railroad employees, Mr. Reese transported only people, rather than goods, and he did so only locally.  Reese Aff. at ¶ 3.  The fact that Mr. Reese may have occasionally transported riders to an airport or train station—or even across state lines—does not establish that he was engaged in interstate commerce in the same way as seamen and railroad employees.  As the Eleventh Circuit explained, "[t]o broaden the scope of § 1's arbitration

exemption to encompass any employment dispute of a worker employed by a company whose business dealings happen to cross state lines, would allow § 1's exemption to swallow the general policy requiring the enforcement of arbitration agreements as pronounced in § 2 of the FAA." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1290 (11th Cir. 2005). "There is no indication that Congress would be any more concerned about the regulation of the interstate transportation activity incidental to" such work "than it would in regulating the interstate 'transportation' activities of an interstate traveling pharmaceutical salesman who incidentally delivered products in his travels, or a pizza delivery person who delivered pizza across a state line to a customer in a neighboring town." *Id.* at 1289–90. Mr. Reese has not demonstrated that he ever transported goods in interstate commerce, which is fatal to his attempt to invoke the FAA transportation worker exemption.

In derogation of the principle in *Circuit City*, Mr. Reese cites to *Davis v. Cintas Corporation* for the proposition that the FAA exemption applies to "truck drivers, bus drivers, and similar occupations." 18-CV-01200, 2019 WL 2223486 at *8 (W.D. Pa., May 23, 2019).

The plaintiff in *Cintas* was a "route sales driver," whose "job responsibilities included delivering fresh uniforms, picking up dirty uniforms, delivering other supplies to Cintas customers," and other sales functions. 2019 WL 2223486 at *1. When analyzing his claims, the court did not consider, because it was not presented with, the question of whether transporting people instead of goods fell within the transportation worker exemption. *See generally*, *id.* Even then, the court found that the plaintiff ***did not*** fall within the exemption because he did not "deliver[] goods in interstate or foreign commerce or directly supervise[] those who did." *Id.* at *9.

3

The *Cintas* court's reference to "bus drivers" qualifying as workers exempt from the FAA was dicta, and does not support Mr. Reese's assertion that he should be able to avoid his obligation to arbitrate.   In reaching its conclusion, the *Cintas* court cited to *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351–52 (8th Cir. 2005), *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137 (9th Cir. 2001), *Am. Postal Workers Union v. U.S. Postal Serv.*, 823 F.2d 466, 473 (11th Cir. 1987), and *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537–38 (2019).   None of these cases supports the proposition that "bus drivers," *i.e.*, transporters of people, fit within the exemption.   *Lenz* dealt with "a transportation company serving primarily as a carrier of general commodities by truck."   431 F.3d at 349.   *Harden* considered a contractor who was "providing a small package information, transportation and delivery service throughout the United States." 249 F.3d at 1139.   *American Postal* reviewed postal workers, who clearly were in the business of delivering goods, not people.   823 F.2d at 468.   Finally, *New Prime* was based on a worker who transported goods for an "interstate trucking company;" there was no dispute in *New Prime* that the worker was engaged in interstate commerce.   139 S. Ct. at 536.   Based on the factual underpinnings of the cases cited by the *Cintas* court, there is no basis to conclude that bus drivers are exempt from the FAA.

In fact, numerous district courts have held that workers in nearly the exact same line of work as Mr. Reese do not fall within the transportation worker exemption.  *See, e.g.*, *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 483–85 (S.D.N.Y. 2008) (rejecting the proposition that "Plaintiffs—who at times transport passengers across state lines as part of a car service—qualify under this residuary exemption for 'workers engaged in foreign or interstate commerce'"); *Gadson v. SuperShuttle Int'l*, 2011 WL 1231311 (D. Md. Mar. 30, 2011) (finding that shuttle drivers who were "employed by Defendants to transport airline passengers to and from the

Baltimore-Washington International ('BWI') Airport" did not fall within Section 1), *vac'd on other grounds*, *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173 (4th Cir. 2013); *Pelayo v. Platinum Limousine Servs., Inc.*, 2015 WL 9581801, *12 n.6 (D. Haw. Dec. 30, 2015) (limousine drivers "are not seamen, railroad employees, or otherwise engaged in the movement of goods in interstate commerce"). And this month, a magistrate judge in *Scaccia v. Uber Technologies, Inc.* found that the plaintiff, who like Mr. Reese, used the Uber App (and occasionally crossed state lines), was not included within the transportation worker exemption of the FAA and was compelled to arbitration.  *See Scaccia v. Uber Technologies, Inc.*, No. 3:18-CV-00418, 2019 WL 2476811, at *4-*5 (S.D. Ohio June 13, 2019).  These decisions make clear that the FAA does not exempt Mr. Reese's agreement to arbitrate with Uber.

> **B.    Mr. Reese Failed To Establish That He Is Among A Class of Workers Engaged In Interstate Commerce**

Even if the FAA exemption did apply to the transportation of people under certain circumstances (and it does not), Mr. Reese failed to establish that transporting passengers locally using the Uber app puts him among a "class of workers engaged in interstate commerce" within the meaning of the exemption.

The transportation worker exemption applies only to "seamen, railroad employees, or any other ***class of workers*** engaged in foreign or interstate commerce."  9 U.S.C. § 1 (emphasis added).  The Supreme Court highlighted the significance of the first two categories to determine Congressional intent behind the phrase "other class of workers" and reasoned that "the classes of workers in § 1 were excluded from the FAA precisely because of Congress' undoubted authority to govern the employment relationships at issue by the enactment of statutes specific to them." *Circuit City*, 532 U.S. at 120-21.  The court found current and soon-to-be enacted federal laws

over particular industries evinced Congressional intent about the categories of workers to whom the exemption applied:

> [b]y the time the FAA was passed, Congress had already enacted federal legislation providing for the arbitration of disputes between seamen and their employees[,] . . . grievance procedures existed for railroad employees under federal law, . . . and the passage of a more comprehensive statute providing for the mediation and arbitration of railroad labor disputes was imminent . . . .

*Id.* at 121.   The court concluded that "[i]t is reasonable to assume that Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers."  *Id.*  The necessary implication of the legislative intent is that the transportation worker exemption did not apply to *local* transportation activities that *were not* subject to broad federal regulatory oversight.  Indeed, the functional equivalent of obtaining a ride through the Uber App at the time that the FAA was enacted was taking a taxicab.  Had the FAA intended for such local services to be included, Congress could have specified workers engaged in that type of work, much like it did with railroad workers and seamen.  It did not.

In his brief, Mr. Reese acknowledges that "he bears the burden of proving non-application of the FAA."  *See* Opp. Brief at p. 7 (*citing Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).  However, his declaration fails to establish that he is part of a class of workers engaged in interstate commerce such that being subject to the FAA would "unsettle established or developing statutory dispute resolution schemes."  This is because the work that he performs—regardless of whether he occasionally crosses state lines—is inherently local in nature.

First, there are no federal laws that govern the use of, let alone call for the resolution of disputes, among transportation network companies ("TNCs") and drivers.  On the contrary, Mr.

Reese's services are regulated exclusively on a *state and local level*, including by the Commonwealth of Pennsylvania and City of Philadelphia. *See, e.g.*, Pennsylvania Transportation Network Company Law, 53 Pa.C.S. § 57A01, *et seq.* (2016) (providing the authority for specific city-based parking authorities "exclusive regulatory jurisdiction over transportation network service originating in the city.")  Congress cannot have intended to exempt local transportation services from coverage under the FAA, as no other "comprehensive" federal legislation governing TNCs or TNC drivers, or disputes that may arise between them, exists.  Mr. Reese therefore cannot overcome the strong presumption of arbitrability established by the FAA, and he must be compelled to arbitration. *See Cintas*, 2019 WL 2223486, at *9; *see also Lee v. Postmates Inc.*, No. 18-03421, 2018 WL 6605659, at *7 (N.D. Cal. Dec. 17, 2018).

## II.     EVEN IF THE FAA DOES NOT APPLY, THE PENNSYLVANIA UNIFORM ARBITRATION ACT REQUIRES ARBITRATION

The Pennsylvania Uniform Arbitration Act provides, in pertinent part, that

> [a] written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract"

42 Pa.C.S.A. §7303.  Importantly, the Pennsylvania Uniform Arbitration Act *does not* contain any transportation worker exemption. *See generally,* 42 Pa.C.S.A. 7301 *et seq.*

The Pennsylvania Supreme Court observed that agreements to settle disputes by arbitration are not only valid, but favored.  *Borough of Ambridge Water Auth. v. Columbia*, 458 Pa. 546, 328 A.2d 498, 500 (1974).  Therefore, this Court may order the parties to proceed with arbitration where it finds the existence of a valid, prior agreement to arbitrate.  42 Pa.C.S.A. § 7304.  Pennsylvania law dictates that any doubts or ambiguity as to arbitrability must be

resolved in favor of arbitration. *Smith v. Cumberland Grp., Ltd.*, 455 Pa. Super. 276, 283, 687 A.2d 1167, 1171 (1997).

Here, there is no question that Mr. Reese and Uber agreed to arbitrate any claims. The December 2015 TSA prominently stated on the first page, "**PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE ALL DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS . . . THROUGH FINAL AND BINDING ARBITRATION.**" (Hughes Decl., Ex. C, p. 1 emphasis in the original.) Furthermore, the Arbitration Agreement contained within the December 2015 TSA states "IMPORTANT: This Arbitration Provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis . . . pursuant to the terms of the Agreement unless you choose to opt out of the Arbitration Provision." (*Id.* at p. 20.) Mr. Reese entered into this agreement, and in doing so, explicitly agreed to arbitrate with Uber.

Mr. Reese may argue that the Arbitration Agreement states that it will be governed and enforced pursuant to the FAA, and therefore, the Pennsylvania Uniform Arbitration Act does not apply. Such an argument has been addressed and rejected. "There is no language in the FAA that explicitly preempts the enforcement of state arbitration statutes." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 595 (3d Cir. 2004). Furthermore, "an arbitration clause can be enforced under state law even in the absence of a state law contingency provision." *Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-CV-04580, 2018 WL 4094959, at *5 (E.D. Pa. Aug. 28, 2018) (citing *Atwood v. Rent-A-Ctr. E., Inc.*, No. 15-CV-1023-MJR-SCW, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016)). In *Kauffman*, the court noted that the arbitration agreement, much like the Arbitration Agreement at issue here, "simply provides that 'the Federal Arbitration Act …

8

shall govern this arbitration provision' and does not contain a state law contingency provision." *Id.* at \*5.  In rejecting the plaintiff's attempt to avoid arbitrating the dispute, the court reasoned that "[the plaintiff] did agree to arbitrate this dispute, and the fact that the Federal Arbitration Act doesn't apply only means that its enforcement mechanisms aren't available, not that the whole dispute can't be arbitrated by enforcing the contract through another vehicle."  *Id.* (quoting *Atwood v. Rent-A-Ctr. E., Inc.*, 2016 WL 2766656, at \*3.) "[T]he inapplicability of the FAA does not render the parties' arbitration provision unenforceable where, as here, the arbitration provision clearly demonstrates the parties' intent to arbitrate disputes."  *Id.* at \*6 (internal quotations omitted); *see also Colon v. Strategic Delivery Solutions, LLC*, ___ A.3d ___, 2019 WL 2345086 (N.J. App. Div. Jun. 4, 2019) (finding that the New Jersey Arbitration Act applied if the plaintiff fell within the FAA's transportation worker exemption).

Based on the language of the December 2015 TSA and the Arbitration Agreement, there is no doubt that Mr. Reese agreed to arbitrate his dispute with Uber, even if he were outside of the coverage of the FAA. Thus, even if Mr. Reese falls within the FAA's transportation worker exemption, he must still arbitrate his claims against Uber under Pennsylvania law.

## III.     CONCLUSION

Mr. Reese does not fall within the FAA exemption.  Even if he did, Pennsylvania law still requires that he arbitrate his claims with Uber.  Mr. Reese has not challenged, and therefore concedes that he executed the Arbitration Agreement, his dispute is covered by the Arbitration Agreement, and the Arbitration Agreement is neither procedurally nor substantively unconscionable.  For these reasons and those set forth more fully in Uber's underlying Motion, the Court should grant its Motion to Dismiss and compel Mr. Reese to arbitrate his claims.

Respectfully submitted,

/s/ *Paul C. Lantis*
Paul C. Lantis (PA #309240)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267.402.3000 (t)
267.402-3131 (f)

*Attorneys for Defendant*
UBER TECHNOLOGIES, INC.

Dated: June 20, 2019

**CERTIFICATE OF SERVICE**

I, Paul C. Lantis, hereby certify that on this 20th day of June, 2019, I caused the foregoing **Reply in Support of Uber's Motion to Dismiss,** to be filed via the Electronic Case Filing (ECF) System and the document is available for viewing and downloading from the ECF System to the following attorneys of record who has consented to electronic service:

Qawi Abdul-Rahman, Esquire
100 South Broad Street, Ste, 910
Philadelphia, PA 19110
(215) 972-7017 (Office)
(215) 972-7087 (Fax)

*Attorneys for Plaintiff*

Jacob Oslick
Seyfarth Shaw LLP
620-8th Ave. 31st Floor
New York, NY 10018

*Attorneys for Defendant Checkr, Inc.*

*/s/ Paul C. Lantis*
PAUL C. LANTIS